Ms. Clark, would you kindly call the first case? Good morning. My name is Heidi Lynn Lambros from the Office of the State Appellate Defender for defendant appellant Nicholas Morfin. Good morning your honors. Assistant State's Attorney Alan Spellberg on behalf of the people. Let me advise the microphone is a recording device and does not amplify. I think we can hear you clearly in your demonstrated spoken voice but you should be advised it does not amplify your voice at all. Okay and with that let's proceed. Good morning your honors. My name is Heidi Lynn Lambros from the Office of the State Appellate Defender for defendant appellant Nicholas Morfin. May it please the court. When then 17-year-old Nicholas Morfin was convicted of more than one murder he was automatically sentenced to a term of natural life imprisonment without the possibility of parole. On June 25th 2012 a United States Supreme Court in Miller v. Alabama in a landmark decision ruled that such automatic mandatory natural life sentence for defendant convicted of homicide is unconstitutional under the Fifth Amendment prohibition against cruel and unusual punishment. The state and we are not here to dispute that ruling. What we're doing here today is to determine whether or not the Miller holding, the new rule established in Miller that no child who commits a homicide can be mandatorily and automatically sentenced to a natural life term is retroactive on collateral review. That question was firmly answered by the Miller court itself. All we have to do, all of the answers are in the Miller decision. What's notable about Miller is the companionship with the State Appellate Defender for defendant appellant Nicholas Morfin. There was a second case to Miller which was a Mr. Contrell Jackson who was on state habeas much in the same identical way that Mr. Morfin is on state post conviction in this case. Now the court took this case and applied the new rule of Miller, applied the rule that is unconstitutional to have a mandatory automatic natural life sentence to the defendant Contrell Jackson who is in an identical place as Mr. Morfin now. Now what we know from Teague is that the Supreme Court doesn't do things arbitrarily. And it does not announce a new rule in a case unless it applies to the defendant and to all similarly situated. And Mr. Morfin is identically similarly situated as Mr. Jackson. Mr. Jackson by our United States Supreme Court got the same relief as Mr. Miller and his case was remanded back to his state for further proceedings consistent with the Miller opinion. As we also know, which the state I'm sure is going to come up here and make known, the court didn't bring up the term retroactivity, nor did it need to. Because as we know from Tyler which is cited in the supporting briefs, a case becomes retroactive when the Supreme Court takes an action. And the action here was applying the Miller rule to the defendant on collateral review Mr. Contrell Jackson. Mr. Morfin is in the identical circumstance as Mr. Jackson therefore should get the same identical relief as Mr. Jackson which is a remand for new sentencing. And this is entirely consistent with the United States Supreme Court's determinations about retroactivity. The court finds that to be retroactive a new rule is either substantive or it's a watershed rule of criminal procedure. And this Miller rule fits within both of those circumstances. As far as the substantive nature of the rule, the court in Miller when it was addressing the breadth of this and talking about their prior rulings in Roper and in Graham and the continuation of that recognized that children are different. And children are constitutionally different much like in the death penalty arena. And if you look at, all we need to do is look at Miller itself. Miller talks about cases, Woodson, Eddings, Sumner, mandatory cases, cases that outlawed and prohibited the mandatory imposition of the death penalty. Were any of those young people 17 any other than Mr. Morfin in Roper and Graham? No, they were younger. But the court extended that and defined juvenile for us as under the age of 18. So Mr. Morfin as a 17-year-old, the rule will apply. So what the court did when they were kind of comparing and contrasting and creating this watershed rule is they looked at these mandatory death penalty cases. And the mandatory death penalty cases which are unequivocally retroactive find that when you have a mandatory sentence that completely excludes any consideration of any type of mitigation or factors, that is unconstitutional under the Eighth Amendment. And the Miller court itself twice said this is no different. This is no different than what we did in Sumner. This is no different than what we did in Eddings. This is no different than Woodson. The mandatory nature of this punishment must be outlawed. Did the Miller court say in essence that there could be a set of facts and circumstances that would dictate the imposition of a sentence of natural life? The Miller court did not whole cloth outlaw the imposition, the potential imposition of a natural life sentence. The mandatory nature of it. Much like the problem with the mandatory nature of the death penalty. You can give a death penalty. You just can't have it be automatic. You can give a juvenile who is convicted of a homicide on a rare occasion, the court did know that this must be rare, but not automatically. The children are in the same position. This is the harshest sentence that a juvenile can possibly receive, is to die in prison. And the court recognized and compared that and made the same analogy. Just as death is different, and I'm quoting the court, children are different too. Why should we conclude that this is a substantive change in the law as opposed to a procedural change? I believe it is substantive. I believe by the language and the cases that the United States Supreme Court cited, it clearly indicated that this was substantive. By comparing it to your Sumner case and basically saying this is the same thing. Sumner was wholly retroactive and was a substantive change in the law. Much in the same way that Miller is a substantive change. And when we look at substantive changes for the term of art for sentencing, what it is is a categorical ban for a particular class of defendants. And I don't know if the Supreme Court in Flowers noticed that too, but when the United States Supreme Court prohibits a certain punishment for a class of people, that's a substantive rule. Here we have the prohibition of automatic natural life without parole term to a category of defendants, which is juveniles, implicating that it is a substantive change in the rule. But again, we would argue that regardless, it is definitely a watershed rule of criminal procedure. When you think about watershed rules, and yes, the state is right, there hasn't really been any since Gideon, but I think this falls in the identical category. A watershed rule is implicated, fundamental fairness and the accuracy of the proceedings are implicated in such a rule, which is exactly what we have here. Nicholas Moffitt had no hearing. None of the other 80 defendants in Illinois who are serving a mandatory natural life sentence and are sentenced to die in prison had a hearing. It is fundamentally unfair that they are required now to serve their illegal sentences. Regarding the accuracy of the proceedings, which is a consideration that we look at when we talk about whether a rule is watershed, we have all these 80 children and Nicholas Moffitt who is undisputably serving an illegal sentence. The state does not dispute, nor can it, that if he were to get the sentence today, it would be struck down as unconstitutional and cruel and unusual. So regardless, and again, everything you need to know is how Miller addressed this question, when it constantly referred to this as in the same vein of a mandatory death penalty statute. How it talked about how, and again, the dissent, I would argue, also in Miller, lamented about the 2,000 children nationwide who are going to be getting new sentencing hearings, including Mr. Moffitt. Because of these reasons... How can you necessarily conclude that the dissent was referring to those attacking their conviction on a collateral basis? There's 2,000 total, around 2,500 persons, defendants, who have a mandatory automatic natural life sentence on the day of the argument. So it's not just... But are those individuals who haven't exhausted their appeals, or does that also include just those people, or does that also include those attacking their conviction on a collateral basis? It would be both. Although the majority of the 2,500 are those that are on in the same position as Mr. Moffitt and Control Jackson, who are on state appeal or state habeas or state post-conviction relief. And that was kind of the lament of, oh, this is what we're going to do, we're overturning these 2,000 sentences. Well, that's what the court requires. And this is in the interest of fairness. The court found that these children are different. And because of that, regardless of what the state thinks, that is what our United States Supreme Court has held. The sentence is not constitutionally permissible. It is cruel and it is unusual. And Mr. Moffitt, much like Control Jackson and much like Evan Miller, is entitled to resentencing. And all the solutions and all the questions that we have are fully and thoroughly contained in the Miller decision itself. The court didn't act in an arbitrary way and found, by extending the relief, the Miller rule, to a collateral review, to convince that all states should extend the Miller rule to other defendants like Mr. Moffitt on collateral review. As it applied there, it should apply here. And again, as I noted, this is completely in sync with the United States Supreme Court's substantive and procedural rulings as far as TEA goes. This ruling, as the court said, is fundamental and critical and essential to our notions of justice and in sentencing and punishment for these children. Would you, in my request, address the issue of res judicata? Of res judicata? Yes. Because Mr. Moffitt has made this claim kind of similarly in the past. I suspect that that may be an argument we'll hear. From the state? Yes. The extension of what would be Graham, what's kind of interesting about Mr. Moffitt's case specifically, is since 1998 he's been actually saying, my sentence is illegal, my sentence is illegal, my sentence is illegal, my sentence is illegal. The state doesn't bring up any type of res judicata simply because the new rule was created on June 25th, and that's indisputable. The remedy that the court provided. Because it's a new rule. Because it is a new rule. Undisputably, yes. Yes. So the rule didn't exist. I guess some of the language did exist, but it didn't exist until June 25th. I'm not sure that they would potentially argue that, but maybe they will, and I would address that if they did. If there's no further questions, as plainly as possible, Miller applies to Mr. Moffitt's case. It applies to Mr. Cuntrell-Jackson's case, and it applies to Mr. Morfin's case. Therefore, he's entitled to a remand to the circuit court for resentencing. Thank you very much. That watershed change in the law you're referring to, that hasn't occurred in 50 years, has it? Well, Gideon, as the state says, is the only case that has a watershed rule. I don't believe that that's necessarily accurate. 50 years ago Gideon was decided. 50 years ago. And Jackson v. Deno, which is not cited in our briefs, which said that you need to have a hearing on a motion to suppress. That was held to be fully retroactive. Things like transcripts. A criminal defendant is entitled to transcripts. That's a purely procedural rule that was held to be fully retroactive. We are really on the edge of history here. This is the first time that we have a watershed rule since Tate. Well, happy to be a part of it. I'm glad we're all a part of it today. Thank you. I'll let Michael. Thank you. Good morning again. Assistant State's Attorney Alan Spellberg on behalf of the people. Counsel stated that the Miller decision itself plainly establishes that its ruling is retroactively applicable to cases which are final prior to its issuance. That is patently untrue. There is nothing in the decision identifying a holding of retroactivity. There is no Teague discussion. There is no analysis of any sort. Instead, what there is, and we concede this, of course, is that one of the defendants involved in the case, Control Jackson, was in an appeal following a collateral attack in the Arkansas State Court. And the reason why that's significant is because his conviction was final long before the decision was reached. But importantly, there was no argument made by the Arkansas authorities regarding retroactivity. There was no discussion of retroactivity in the lower state courts. And I asked this court to look at not just precisely at the Miller decision, but look at the underlying decisions in the Arkansas authority. And you will see that there seems to be no retroactivity analysis engaged anywhere in any Arkansas court regarding any of these issues. And the reason why that's important is because the United States Supreme Court has said that for purposes of Teague identifying the holdings of the court, you have to look and see what was litigated before the court, what was discussed, and what was held. You should not, as a matter of course, look to see for issues which are lurking in the record. And that is a well-established doctrine of appellate procedure and appellate counsel, that we don't look for holdings that aren't reached. And it's important from a Teague retroactivity standpoint because, as we know from Danforth versus Minnesota, different states have different rules regarding retroactivity. And the Teague doctrine is not mandated by the United States Supreme Court to state courts to be applied. Illinois, however, the Illinois Supreme Court in People versus Flowers adopted the Teague standard, meaning that this court here is bound to engage in a full Teague retroactivity analysis. And so the fact that Control Jackson may have received relief from the United States Supreme Court is not a sufficient basis for this court to reach a conclusion. Instead, it must examine the Teague two-prong test. And certainly it is undisputed that Teague applies because it was a new rule of law prior to the Miller decision. As we established in our supplemental brief, it had long been recognized that mandatory natural life sentences could lawfully be imposed. There had before that never been any holding by the court restricting mandatory natural life sentences. Instead, the notion of proportionality under the Eighth Amendment was restricted to death penalty cases. And so up until Miller versus Alabama, there had been no holding. There had been no reason to rule otherwise. And so the decision by itself establishes itself as a new rule of law. And then under Teague, it can only be applied retroactively to this defendant's case if it satisfies one of the two provisions. One, is it a substantive rule? And clearly it cannot be because the court goes out of its way to say that it's not a substantive rule. As the court stated on page 2471, our decision does not categorically bar a penalty for a class of offenders or type of crime, as, for example, as we did in Roper or Graham. Instead, it mandates only that a sentencer follow a certain process, considering an offender's youth and attendance circumstances before imposing a particular penalty. By its plain language, that is a rule of procedure. And we know from Teague, we know from the Illinois Supreme Court cases, and De La Paz, and Morris, and all the cases in Flowers, rules of procedure can only be applied retroactively if they are watershed rules. And we know from Teague and from the other cases, that watershed rules are only those rules which dramatically alter our understanding of the process, of the fairness of the process. And the only case that the court has identified as being one that satisfies that is Teague, is, excuse me, is Gideon v. Wainwright. Now, counsel mentioned a couple other cases, Jackson v. Deno, and the right to procedures. I would just point out, as we pointed out in our supplemental authority, where we cited State v. Gieter from the Florida court, that prior to Teague, there was a different rule of retroactivity, which had been adopted by the United States Supreme Court. It was the link letter standard, the Stovall link letter standard. And it was rejected in Teague and was replaced by this two-prong approach, precisely because there was no clarity as to what could be deemed retroactive and what wouldn't be deemed retroactive. So any case that was applied retroactively prior to Teague, it's not clear that it would be deemed retroactive today under the Teague regime. Let me see if I understand. Sure. On day one, the imposition of mandatory natural life sentence is constitutional. On the next day, it's deemed to be unconstitutional. And that makes sense. Your Honor, what your question is getting to is the policy decision of whether or not determinations of new rules of criminal procedure should be retroactively applicable. I guess perhaps what I might be questioning or raising is a potential argument that in my scenario, perhaps a question of judicial economy. And it's very, one may argue, very cleverly disguised. But why deal with 2,000 or 2,500 cases may be the underlying issue. And I'm just trying to figure that out. If I understand the question, Your Honor, please correct me if I don't. The question is whether or not the necessity of judicial economy is a reason to not deem it retroactive. I'm sorry. Those who suggest that this decision affects procedure and therefore retroactivity is not appropriate may be very eloquent in its rationale. But I'm wondering if it really cuts to the question of. I understand your question. The question is if it is cruel and unusual today under the Eighth Amendment, how can we continue to apply it and have it go forward? Or was it cruel and unusual on Monday? When we now on Tuesday declare that it is cruel and unusual. Was it cruel and unusual on Monday? And the answer to that, Your Honor, is at the time the sentence was imposed in this case, when Nicholas Morphin was sentenced to natural life imprisonment, admittedly to a mandatory natural life sentence for the murders of Carrie Hovell and Helena Martin, it was constitutional. It was clearly constitutional. And this is a new rule of law under the Eighth Amendment that we cannot impose a mandatory natural life sentence going forward. But the fact that it is an Eighth Amendment case, the fact that it is a determination of cruel and unusual punishment, is not by itself a reason to reject non-retroactivity under Teague. And the reason why is explicitly stated in Beard v. Banks, a case which we cite in our supplemental brief. Beard v. Banks involved the question of whether or not Mills v. Maryland should be deemed retroactive. Mills v. Maryland held that it is unconstitutional to tell a sentencing jury that you can only find a mitigating factor to reject the death penalty if you unanimously agree that the mitigating factor exists. The court said no. Individual jurors have the right to determine what's mitigating to themselves and decide whether or not death is the appropriate sentence. So it was a very important case in terms of eliminating a restriction to the availability of mitigating evidence before the imposition of death penalty. But then the question became, is that decision, is Mills v. Maryland retroactively applicable? And what the court held in Beard v. Banks is no, it is not. Because even though it's an Eighth Amendment case, even though the Eighth Amendment demands individualized sentencing of the mitigating factors, individualized consideration of the mitigating factors, it doesn't mean that the sentence which was imposed prior to its decision being issued was cruel and unusual at the time that it was issued. It wasn't unconstitutional at the time. And the respect that's necessary for the proceedings that occurred at the time in compliance with the law as it was understood at the time is a reason why the newer decision is not applied retroactively. So in answer to your question, I believe, we know today that this could not be imposed under the Eighth Amendment, but that doesn't mean that it couldn't be imposed back then under the Eighth Amendment. And so that's why I preface my answer again with the policy of non-retroactivity. In Teague and then in Flowers, our Supreme Court identified specifically the necessity of recognizing the finality of convictions, that there must be a termination to the litigation, that society demands it, the courts demand it. We need to know when the provisions are done, because otherwise you'd be expecting the state, you'd be expecting the courts, to be relitigating issues over and over and over again. We have to be able to look and see, was it done appropriately at the time under the law as was understood at the time? A couple other just briefly points. I can appreciate the need for finality, and I also believe it to be subjective. But it seems to be consistent with the notion of judicial economy. And I don't know that that should be the court's concern. Your Honor, I agree with that. I don't believe judicial economy is the court's concern. And if you believe that I'm offering a subtext of judicial economy, I wish to reject that outright. We are not claiming that Miller should not be applied retroactively simply because we don't want to burden the court or ourselves with additional sentencing hearings. It's really the question of, was the sentence deemed fair and constitutional at the time that it was imposed? And is this case final? There has to be some finality. And not from a judicial economy standpoint, but from a respect for the societal process standpoint. I hope I'm making myself clear as to what that distinction is, but otherwise we would be relitigating cases over and over again. And that gets to what your question was about race judicata, whether or not race judicata factors into this. In terms of Miller v. Alabama being retroactively applicable, we are not making a race judicata argument. If it's a new rule of law, that would be a basis to overcome race judicata. However, as to the defendant's other claims, in particular his state constitutional claims, that his sentence violates state constitution, and that Miller now shows we have a broader understanding of the brain development and brain science of youthful offenders, that is race judicata for the state constitutional claim. There is no new rule of law which is being applied to that. We know what the state constitution requires, and we learned that from the Leon Miller decision, which this court has already rejected as being inapplicable to this defendant. And so race judicata would apply to his challenges to his natural life sentence under the state constitutional regime, but certainly wouldn't apply under the Eighth Amendment in light of Miller. Just one other point. Counsel mentioned Sumner, the mandatory death penalty scenario cases, which are, as she said, unequivocally retroactive. Just to clarify what Sumner involved. Sumner was a case involving one of the holdover questions from the earlier death penalty cases from the United States Supreme Court. Sumner involved a defendant who was in prison for natural life and killed someone in prison, was convicted of murder, and was sentenced to death penalty as required by the law. It was a mandatory death penalty. And the question as it reached the United States Supreme Court was, is that constitutional? Is any mandatory death penalty unconstitutional? And the court ultimately said, yes, it was. Now the only case which counsel cites, and the only case which I could find finding that that decision was retroactive, and is the only one which she cites in her supplemental reply brief, is a case called Fig Pen versus Big Pen out of the state of Alabama. And if you read that decision, you will see that there was no Teague retroactivity analysis of any sort in that case. Instead, the entire retroactivity analysis was, under our state constitution, this cannot be lawfully applied, period. So there was no analysis as this court would have to engage in, because we tell flowers. Instead, it was a question of state law that it applied retroactively. If there are other cases saying that it applies retroactively elsewhere, I was unable to find them. And then finally, I would just again point to the case that we cited in additional authority, State versus Gieter, out of the Florida appellate court, pointing out that that is the only case in the United States at this point, the only published decision, engaging in an analysis of Teague retroactivity, actually, and finding that Miller doesn't apply because it's a procedural rule and it didn't undermine the fairness of the proceedings at the time. Importantly, Florida uses the more lax Stovall link letter standard as opposed to the Teague standard. Teague specifically rejected the link letter standard as being too easy to find retroactive application. But in Florida, the Florida courts still apply that. And the current state of the law there is that Miller does not apply retroactively. And so I would suggest this court read that decision carefully and see how another appellate court panel has determined that Miller has not changed the situation in such a way to be deemed a watershed opinion. And for those reasons, we would ask this court to reject defendant's arguments and affirm the denial of his 214-01 petition. Thank you. Thank you. Just briefly, I want to say that Florida is wrong and that this court should not follow Florida, nor is it bound to follow Florida. Florida was incorrect in its analysis. And again, we also cited as a case Stacey Simmons. The Louisiana court has found under its state, which sounds remarkably like our 214-01 kind of litigation, that in Louisiana the sentence is illegal. And since it's illegal under the state constitution, under their state law, it's essentially void, which means that that defendant in Louisiana was entitled to a remand for resentencing. Much in the same way we can avoid Teague and just find under Illinois' very well-established voidness doctrine that because this sentence today, Mr. Morphin's sentence right now, violates the state and the federal constitution, it's void and remanded for resentencing. Doesn't your argument require us to conclude that our Illinois Supreme Court wrongly decided Flowers? I did put that I do think that Flowers is, considering Danforth, should be reexamined. But no, not necessarily. We can put Flowers to the side, and this court, of course, could not hold that the Illinois Supreme Court was incorrect and just address it under the voidness principles. But I believe even under a Flowers analysis, which the court doesn't have to partake in, and which the United States Supreme Court says states don't have to follow Teague. But we do. But you do, yes. We have to follow Flowers, yes. But I also want to note, now that we're on the subject of Teague, a very curious kind of interesting fact about Teague itself is that the state in Teague in the Teague case never argued retroactivity either. So it's really irrelevant for the purposes of whether or not what the Supreme Court said or didn't say that the state in the Jackson case didn't effectively assert it. Because if you look at Teague, the court sua sponte addressed the retroactivity question. It was raised for the first time in an amicus brief, and neither of the parties addressed the retroactivity question. They argued and they litigated the actual substantive claim, and then the court came out with the surprise of Teague. So it's really irrelevant that the state in the Jackson case didn't apply Teague. Certainly the United States Supreme Court wouldn't have announced a new rule just sloppily because the state just forgot to raise a defense. Do you agree we're a Teague state? We are a Teague state. Hopefully that might be different. Today we're a Teague state. I also want to address kind of the subtext that the state is saying, and I certainly hope that they aren't saying. There's 80 people in Illinois who are doing a mandatory natural life sentence. Not 2,500. There's only 80. And that's statewide. That's not even dividing it. We're Cook County. One of the considerations for Teague is the balance between the state's need for finality, which includes the burden on the state of retrying, the burden on the state of new proceedings, versus the defendant's right to the benefit of the rule. I would suggest that if we're talking about judicial economy, if we're talking about, you know, the process of relitigating, that 80 statewide is really a drop in the bucket. That that should not, especially with such a low number that we have in Illinois right now, with only 80 children who have gotten this mandatory life without parole sentence, that burden is not enough to tip the balance in favor of not finding this retroactive. If there's no further questions. Thank you. Thank you very much. I'd like to thank you both for a well brief. And we will take this matter under advisement. Court will be in recess.